UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN DEPARTMENT OF COMMUNITY HEALTH,<br><br>Plaintiff,<br><br>v.<br><br>WOODCARE X, INC., a Michigan corporation d/b/a Caretel Inns of Linden,<br><br>and<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES - CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br><br>Defendants. | Case No. 1:09-cv-758<br><br>HONORABLE PAUL L. MALONEY |

**OPINION AND ORDER**

Granting Defendant HHS's Motion to Dismiss for Lack of Subject-Matter Jurisdiction;
Dismissing the Complaint as to Both Defendants;
Terminating and Closing the Case

For the reasons that follow, the court will dismiss the complaint for lack of subject-matter jurisdiction.

**BACKGROUND: MEDICARE and STATE SURVEY AGENCIES**

Under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* ("Medicare"), the federal taxpayers pay for certain healthcare services provided to aged and disabled beneficiaries, including "Part A" payments for post-hospitalization skilled nursing facility services, *see* 42 U.S.C.

§ 1395c. The Secretary of HHS administers Medicare through CMS. The Secretary enters into agreements under section 1864 of the Social Security Act, 42 U.S.C. § 1395aa, with health agencies in the states, including the State of Michigan. Under these so-called "1864 agreements", state health agencies such as MDCH perform on-site surveys of some healthcare providers, including skilled nursing facilities. The state health agency then makes recommendations to the Secretary about the facilities' compliance with health and safety standards required for participation in Medicare. *See* 42 U.S.C. § 1395-3(g)(1)(A), as well as 42 C.F.R. Part 483 Subparts E & F and Part 488.

MDCH and HHS entered into an 1864 agreement, which obligated the MDCH to certify whether a nursing home was in compliance with Medicare requirements, using only the "survey and certification as set forth in the Act, regulations and program issuances." *See* Complaint filed August 17, 2009 ("Comp"), Attachment ("Att") A at 3-5 (Art. II, Secs. A and D). The Medicare Act requires that each skilled nursing facility participating in the program be surveyed for compliance with health and safety standards at least once every fifteen months, and each State's average interval between standard Medicare surveys must be no more than 12 months. *See* 42 U.S.C. § 1395i-3(g)(2)(A)(iii)(I). A state survey agency operating under an 1864 agreement, such as the MDCH, is responsible for investigating all complaints of noncompliance and ensuring that the facility corrects any noncompliance, and it must also "timely" investigate allegations of resident abuse and neglect or misappropriation of residents' property. *See* 42 U.S.C. §§ 1395i-3(g)(1)(C) and 1395i-3(g)(4). If MDCH found a nursing home to be non-compliant, the 1864 agreement authorized it to recommend an appropriate penalty to the HHS, *see* 42 U.S.C. §§ 1395i-3(g) and 1395i-3(h), as well as 42 C.F.R. Part 488, Subpart E.

Citing budgetary constraints, in November 2007 HHS instructed state survey agencies to

"prioritize" survey and certification activities under their 1864 agreements. *See* Comp, Att B (November 2007 HHS-CMS instructions to state agencies). It appears that state survey agencies accordingly assign low priority to surveying nursing homes which are applying to participate in Medicare for the first time, spending more of their limited resources ensuring that all existing facilities are surveyed within the statutorily mandated period. *See* Def HHS's MTD at 4 (citing Comp Ex B (November 2007 HHS-CMS instructions), App. A, Sec. IV at 3). But the priority of existing-facility surveys over new-applicant surveys is not absolute. There is an exception which allows a new applicant facility to receive a higher priority "if lack of Medicare certification would cause significant access-to-care problems for Medicare beneficiaries", *see* Comp Ex B (November 2007 HHS-CMS instructions), App. B at 1. The new-applicant facility asks for higher priority from the state agency, which in turn conveys the request to HHS along with the agency's recommendation. *See id.*

**FACTUAL BACKGROUND and PROCEDURAL HISTORY**

In 1992-1993, the MDCH denied Woodcare X, Inc. ("Woodcare")'s application for a "Certificate of Need" ("CON") to build new nursing homes in Genesee County and other counties in Michigan and Woodcare appealed in state court. *See generally* MICH. COMP. LAWS § 333.22209(1). In 1993, the MDCH settled with Woodcare, *see* Comp Ex G ("the settlement agreement"), permitting it to build several nursing facilities in Michigan, including a 60-bed facility known as Caretel Inns of Linden ("Caretel"). In June 2008, Caretel asked CMS for an exception to the priority system so that MDCH could conduct a Medicare-only certification survey of the newly-licensed facility, *see* Comp Ex G, but CMS declined to grant an exception. *See also* Comp

Ex G at 7. CMS explained that the state agency (MDCH) did not agree with Woodcare's contention that Genesee County had "an overwhelming need for more certified beds that would justify an exception." CMS also reported MDCH's statement that it already could not guarantee meeting its existing-facility survey obligations, which themselves took priority over new-facility surveys like that requested by Woodcare/Caretel. *See* Comp Ex E.

Woodcare's State-Court Action Against MDCH Based on Michigan Regulation. Four months later, in October 2008, Woodcare brought a mandamus action in the Circuit Court for Genesee County, Michigan, to force MDCH to conduct a Medicare-only initial certification survey for Woodcare's Caretel facility. *See* Comp ¶ 15 and Comp Ex E (Woodcare's state-court mandamus complaint). Woodcare contended that under Michigan law, MDCH had a nondiscretionary duty to perform a Medicare survey within three months of Woodcare/Caretel's request. *See* Comp Ex E ¶¶ 15-16 (citing MICH. ADMIN. CODE R. 325.21506). Woodcare did not contend that any provision of federal Medicare law required MDCH to perform the survey. *See* Comp Ex E.

Woodcare's State-Court Action Against MDCH Based on Settlement Agreement. About a month later, Woodcare filed a second lawsuit in Michigan Court of Claims against MDCH. Woodcare sought to compel MDCH's specific performance of the 1993 settlement agreement, and it also sought damages. *See* Comp Ex F (Woodcare's state-court complaint to enforce settlement). Woodcare contended that in the settlement, MDCH and Woodcare agreed that Caretel would be built as a Medicare-only facility and "would not seek certification for Medicaid." *See* Comp Ex F ¶¶ 22ff and 28. Woodcare further contended that MDCH now "refused to survey [Caretel] for Medicare certification unless [Caretel] also agrees to be certified for Medicaid." Comp Ex F ¶ 32. Therefore, Woodcare claimed, MDCH was in breach of the 1993 settlement agreement. *See* Comp Ex F ¶ 38.

Woodcare's two lawsuits against MDCH were consolidated in the 7th Judicial Circuit Court for the County of Genesee ("the state court") as Case No. 08-089784-CZ, with the Honorable Jeffrey L. Neithercut presiding; Woodcare's mandamus claim was count one, and its breach-of-settlement claim was count two. *See* Comp Ex F at 1. The state court entered summary judgment in favor of Woodcare on the mandamus claim, holding that the Michigan regulation obligated MDCH to perform a Medicare-only survey of Caretel within three months of Woodcare/Caretel's request. *See* Comp Ex F ¶ 23. The parties agree that MDCH then conducted a Medicare-only survey of Caretel as ordered by the state court and provided the results to CMS, which led to Caretel's approval and enrollment as a Medicare facility. *See* Comp ¶ 25 and HHS's MTD at 9 n.7.

On Woodcare's breach-of-settlement claim against MDCH, the state court scheduled a bench trial to commence on September 1, 2009. *See* Comp Ex F ¶ 23. MDCH, the defendant there, filed an emergency motion to adjourn the trial or, in the alternative, to transfer the case to federal district court. On the eve of trial, the state court postponed the trial to November 10, 2009. *See* Genesee Cty. Cir. Ct. Case No. 087894-CZ, Doc. Nos. 109 and 110.

On October 6, 2009, MDCH filed a motion for summary disposition on the basis of governmental immunity and lack of subject-matter jurisdiction. *See* Genesee Cty. Cir. Ct. Case No. 087894-CZ, Doc. Nos. 124-126. Woodcare filed an opposition brief on October 20, 2009. *See id.*, Doc. Nos. 135-137. On October 26, 2009, the state court heard oral argument and then denied MDCH's belated motion for summary disposition. *See id.*, Doc. Nos. 142 (minutes of hearing), 149 (written order denying motion), and 150 (transcript of hearing).

On November 4, 2009, MDCH took an interlocutory appeal from the order denying its motion for summary disposition based on governmental immunity, and the case was stayed at the

trial-court level. *See* Genesee Cty. Cir. Ct. Case No. 087894-CZ, Doc. Nos. 151-153. On Thursday, January 14, 2010, the state trial court forwarded its complete case file to the Michigan Court of Appeals, *see id.*, Doc. No. 156, and the appeal is pending.

MDCH Brings this Action in Federal District Court. Two weeks before the initial state-court trial date, MDCH filed the instant lawsuit on August 17, 2009. As in state court, MDCH contends here that (1) when it refused to perform the Medicare-only survey requested by Woodcare/Caretel, it was acting on behalf of the HHS pursuant to its "1864 Agreement"; (2) it lacked authority to perform the Medicare-only survey, because HHS-CMS did not request it; and (3) pursuant to HHS's so-called "Touhy regulations", MDCH and its employees are HHS-CMS agents/contractors/employees in connection with Medicare-certification surveys. *See* Comp ¶¶ 6-9. Accordingly, MDCH reasons, HHS is "contractually responsible for MCDH's initial refusal or failure to conduct a Medicare-only survey requested, and HHS should indemnify it for "any costs incurred with regard to its defense" of Woodcare's state-court litigation "including any judgment entered." Comp, Prayer for Relief ¶¶ D and G. MDCH also asks this court to order HHS to submit to the jurisdiction of the state court and substitute itself for MDCH as defendant in the state-court action. *See* Comp, Prayer for Relief ¶ H.

**DISCUSSION: THIS COURT LACKS SUBJECT-MATTER JURISDICTION**

As the plaintiff, MDCH has the burden of establishing the existence of subject-matter jurisdiction. *See Giesse v. HHS*, 522 F.3d 697, 702 (6th Cir. 2008) (Griffin, J.) ("When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to

survive the motion to dismiss.") (citing *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996)). The court determines that MDCH has not carried this burden.

The Declaratory Judgment Act is Not a Source of Jurisdiction.

"'[I]t is well established that § 2201 does not create an independent cause of action.'" *State Farm Mut. Auto. Ins. Co. v. Carter*, 2008 WL 5740100, *1 n.1 (W.D. Mich. Oct. 28, 2008) (Maloney, C.J.) (quoting *Davis v. US*, 499 F.3d 590, 594 (6th Cir. 2007) (Gilman, Griffin, D.J. Ackerman) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (holding that by passing the Declaratory Judgment Act, "Congress enlarged the range of remedies available in federal court but did not enlarge their jurisdiction."). Thus, MDCH must show some other basis for subject-matter jurisdiction before it can invoke the Declaratory Judgment Act. *See Davis*, 499 F.3d at 594 (citing *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007)); *see, e.g., Marel v. LKS Acquisitions, Inc.*, 585 F.3d 279, 280 (6th Cir. 2009) (Rogers, J.) ("There is no federal subject matter jurisdiction over this case because, looking behind the declaratory judgment form of this action, the only federal issue in this case arises as a possible defense to a state law claim. The federal Declaratory Judgment Act did not expand the scope of federal subject matter jurisdiction.") (citing *Skelly*, 339 U.S. at 671); *Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 2008 WL 793759, *2 (W.D. Mich. Mar. 24, 2008).

Plaintiff MDCH Has Not Established Diversity Jurisdiction.

"Title 18 U.S.C. § 1332 authorizes district courts to exercise diversity jurisdiction only when there is *complete* diversity of citizenship." *Old Republic Title Nat'l Title Ins. Co. v. Escrow & Title Servs., Inc.*, 2009 WL 3711572, *4 (W.D. Mich. Nov. 4, 2009) (Maloney, C.J.) (citing *Probus v.*

*Charter Comms., LLC*, 234 F. App'x 404, 407 (6th Cir. 2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999))). Complete diversity exists only when no plaintiff and no defendant are citizens of the same State. *See Old Republic*, 2009 WL 3711572 at *4 (citing *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 540 (6th Cir. 2006)). It is undisputed that MDCH is a Michigan state governmental entity and defendant Woodcare is incorporated in Michigan, so MDCH cannot satisfy 28 U.S.C. § 1332. The court next considers whether MDCH has shown federal-question jurisdiction. It has not.

If MDCH Asserts a Medicare Claim, the Medicare Act Precludes Federal-Question Jurisdiction

Title 42 of the U.S. Code is entitled Public Health and Welfare. Within title 42, Section 7 is entitled Social Security, and its Subchapter XVIII governs Health Insurance for the Aged and Disabled, including Medicare. Within Subchapter XVIII, section § 1395ii provides as follows,

> *The provisions of . . . section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II* of this chapter, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively.

42 U.S.C. § 1395ii (emphasis added). Therefore, the Medicare Act incorporates 42 U.S.C. § 405(h), which provides as follows:

> No findings of fact or decision of the [Secretary of HHS] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [HHS], or any officer or employee thereof shall be brought under section 1331 [the general federal-question provision] or 1346 of title 28 to recover on any claim arising under this title.

HHS contends that "[s]ince MDCH's Complaint is based on its 1864 Agreement with the Secretary, the action arises under the Medicare Act." HHS's MTD at 14. Therefore, HHS contends, 42 U.S.C. § 405(h) (as incorporated into the Medicare Act by § 1395ii) will preclude general federal-question

jurisdiction under 28 U.S.C. § 1331, and MDCH will need to show that the Medicare Act elsewhere specifically confers federal-question jurisdiction on the district courts over claims such as these. But MDCH makes no effort to identify any provision within the Medicare Act which it believes confers subject-matter jurisdiction on this court here. On the contrary, MDCH's opposition brief flatly states, "This case does not arise under the Medicare Act." P's Opp at 11.[1]

<u>If MDCH Asserts a Contract Claim, the 1864 Agreement and the CDA Vest Jurisdiction Elsewhere</u>

In its complaint, the MDCH claims that "[HHS] CMS is contractually responsible for

---

[1] Taking MDCH at its word about the nature of the claim it intends to assert, it is unnecessary to consider MDCH's argument that 42 U.S.C. § 405(h)'s bar on general-federal-question jurisdiction does not apply under these circumstances. MDCH argues as follows,

> [W]hen one reads 42 U.S.C. § 405(h) . . . together with 42 U.S.C. § 405(g), it is clear that the claim(s) thereby barred are those asserted against the . . . HHS . . .made "after any final decision of the Commissioner of Social Security [or Secretary of HHS] made after a hearing." But MDCH does not [allege] that HHS ever conducted a hearing or that it reached a final decision.

P's Opp at 11 (quoting 42 U.S.C. § 405(g)). HHS responds as follows:

> Plaintiff misreads the Medicare Act when, citing 42 U.S.C. § 405(g), it asserts that the only claims barred by section 405(h) "are those asserted against . . . HHS . . . made 'after any final decision of the Commissioner of Social Security made after a hearing. To the contrary, section 405(g) *confers* federal court subject matter jurisdiction on appeals from final decisions of the Secretary made after a hearing.
>
> As the Supreme Court explained in *Ringer* [*Heckler v. Ringer*, 466 U.S. 602 (1984)], such claims are not precluded by section 405(h) because section 405(h) expressly acknowledges that courts have jurisdiction to review the Secretary's decisions "as herein provided." *Ringer* 466 U.S. at 614-15 ("The third sentence of 42 U.S.C. § 405(h) . . . provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claims arising under' the Medicare Act.").

Def HHS's Reply at 5 n.1 (citations to plaintiff's opposition brief omitted) (paragraph break added).

MDCH's actions with regard to Woodcare X, Inc. and its request for a Medicare-only survey" and that CMS must indemnify MDCH and pay any judgment that may be entered against it by the Michigan courts. *See* Comp, Prayer for Relief ¶¶ C and G. The only potentially relevant contract identified in the record is MDCH's "1864 Agreement" with HHS-CMS. Article XIV of the 1864 Agreement provides that the "Agreement is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613), referred to . . . as the 'CDA.'" Comp Ex A at 15 ¶ A.[2] [3] The CDA provides that, with the exception of actions against the Tennessee Valley Authority, "a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract

---

[2]There is no question that the HHS-CMS is an "executive agency" as defined by the CDA. Title 42 U.S.C. § 601(2) provides,

> *The term "executive agency" means an executive department as defined in section 101 of Title 5*, an independent establishment as defined by section 104 of Title 5 (except that it shall not include the Government Accountability Office), a military department as defined by . . . , and a wholly owned Government corporation as defined by . . . .

Emphasis added. In turn, title 5 U.S.C. § 101 lists HHS as an executive department.

[3]

Because Article XIV of the 1864 Agreement expressly provides that disputes arising under the Agreement are subject to the CDA, it is unnecessary to decide whether the CDA would apply to this dispute in the absence of that contractual language. *See* 41 U.S.C. § 602(a), Applicability of Law - Executive Agency Contracts ("Unless otherwise specifically provided herein, this chapter applies to any express or implied contract . . . entered into by any executive agency for – (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property.").

Title 41 U.S.C. § 603 governs maritime claims, while § 604 governs fraudulent claims.

Title 41 U.S.C. § 605 addresses decisions by contracting officers, while § 606 authorizes a contractor to appeal such a decision within ninety days to an agency board of contract appeals as provided in § 607. Section 608 governs small claims. Section 610 governs subpoena, discovery, and deposition; section 611 governs interest on amounts found to be due to contractors; section 612 involves the government's obligation to promptly pay judgments on such claims; and section 613 is a severability provision.

provision, regulation, or rule of law to the contrary." 41 U.S.C. § 609(a)(1).

Our Circuit holds that "the Contract Disputes Act (CDA) grants exclusive jurisdiction to the Court of Federal Claims for contract claims exceeding $10,000 brought against 'executive agencies.'" *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 381 (6th Cir. 2008) (citing *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890-91 (6th Cir. 1998)). In other words, "[t]he CDA bars district court jurisdiction if the court determines that a plaintiff's claims against a government agency are 'essentially contractual' in nature." *B&B Trucking, Inc. v. US Postal Service*, 406 F.3d 766, 768 (6th Cir. 2005) (*en banc*) (quoting *RMI Titanium Co. v. Westinghouse Elec. Co.*, 78 F.3d 1125, 1136 (6th Cir. 1996)). Thus, the MDCH cannot bring in this court any claim that HHS breached the 1864 Agreement (or that Woodcare breached the 1993 MDCH-Woodcare settlement agreement), or any other claim that is "'essentially contractual' in nature", *B&B*, 406 F.3d at 768. The MDCH may assert such claims only in the U.S. Court of Federal Claims.

Just as the MDCH denied that it is asserting any claim under the Medicare Act, it also disavows any claim of a contractual nature. *See* P's Opp at 9 ("MDCH's claim against CMS thus does not derive from the 1864 Agreement, but rather from CMS's and DOJ's extracontractual obligation to defend an SSA when it is sued *because* it complied with the 1864 Agreement and CMS's S&C [survey and certification?] directives.") (italics in original); P's Opp at 11 ("CMS's argument again wrongly assumes that MDCH asserts a claim arising under the 1864 Agreement.").

The 1978 GAO Decision and 28 U.S.C. §§ 517-518 Do Not Authorize Jurisdiction Here

Finally, the MDCH attempts to rely on a non-Medicare federal statute and a decision of the Comptroller General. MDCH argues as follows:

> CMS . . . does not allege that it complied with usual federal agency process, i.e., alerting DOJ when it learned of the litigation against the federal employees who work for MDCH.[4] CMS knew that Woodcare's lawsuits [against MDCH in state court] involved the U.S. Government's Medicare program as the real party in interest, and thus should have requested that the DOJ substitute for the Michigan Attorney General in both lawsuits, remove them to an appropriate U.S. District Court, and raise appropriate defenses.
>
> That is, "it is the policy of the Department of Justice to represent Federal employees sued for acts taken in the [performance] of [their] official duties under the authority of 28 U.S.C. §§ 517, 518 (1970)."

P's Opp at 9-10 (footnotes 27-29 omitted) (italics and brackets in original) (paragraph break added) (quoting *In re Norman E. Guidaboni*, 57 Comp. Gen. 444, 446, BN-175031, 1978 WL 13413 (Apr. 28, 1978)).

As HHS points out, the MDCH's reliance on 28 U.S.C. § 517 is misplaced. That provision, entitled Interests of United States in pending suits, merely *authorizes* the U.S. Attorney General to send DOJ attorneys to appear in federal or state court "to attend to the interests of the United States"; it does not *require* the Attorney General or the Department of Justice to do so. Section 517 uses the word "may", and "[t]he word 'may' clearly connotes discretion." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) (Roberts, C.J., for a unanimous Court) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (Rehnquist, C.J., for the Court)); *see, e.g., Montez ex rel. Estate of Hearlson v. US*, 359F.3d 392, 397 (6th Cir. 2004) ("The use of the word 'may' in these regulations, rather than 'shall', demonstrates that their implementation is left to the discretion of BOP officials.") (citing, *inter alia*, *Dorris v. Abscher*, 179 F.3d 420, 429 (6th Cir. 1999)).

The D.C. Circuit Court of Appeals has applied this venerable rule of statutory construction

---

[4]Because of the disposition of this case, the court need not decide whether the MDCH's employees can ever be considered "federal employees."

to 28 U.S.C. § 517, and the MDCH shows no reasons why this court should not do so as well. *See Falkowski v. EEOC*, 764 F.2d 907, 911 (D.C. Cir. 1985) (DOJ's decision not to provide counsel to a federal employee was not reviewable by a federal district court); *Hall v. Clinton*, 285 F.3d 74, 80 (D.C. Cir. 2002) ("The statute plainly confers upon the Attorney General broad discretion in his decision to dispatch government lawyers . . . .").[5] The MDCH does not identify any decision holding or suggesting that 28 U.S.C. § 517 imposes a duty on the federal government, let alone a duty that is judicially enforceable, and the court finds no such decisions.[6]

In short, by disavowing any claim under the Medicare Act, the MDCH avoids the dispute

---

5

The court also has no jurisdiction over MDCH's complaint as to defendant Woodcare. The MDCH is a Michigan state-government agency and Woodcare is a Michigan corporation, so there is no diversity jurisdiction. Nor has MDCH shown any basis for federal-question jurisdiction; as discussed above, MDCH flatly states that this action does not arise under the Medicare Act, and it does not identify any other applicable federal constitutional or statutory provision.

6

In any event, decisions of the Comptroller General have no binding force on the federal courts. *See Delta Chem. Corp. v. West*, 33 F.3d 380, 382 (**4th Cir.** 1994) ("Opinions of the GAO, a political arm of the Congress, are not binding on this court . . . .") (citing *Diebold v. US*, 947 F.2d 787 (6th Cir. 1991) (Wellford, J., dissenting o.g. from denial of petition for rehearing *en banc*));

*Filipiczyk v. US*, 99 Fed. Cl. 776, 785 (**Fed. Cl.** 2009) ("'[T]he Court of Claims is not bound by the views of the Comptroller General.'") (quoting *MTB Group, Inc. v. US*, 65 Fed. Cl. 516, 525 (Fed. Cl. 2005)); *Cleveland Telecomms.; Corp. v. Goldin*, 43 F.3d 655, 658 n.1 (**Fed. Cir.** 1994) ("Decisions of the Comptroller General are not precedents that are binding on this court. However, we may look to them for guidance when they are reasonable and in conformance with the law.");

*Novato Fire Protection Dist. v. US*, 181 F.3d 1135, 1140 n.5 (**9th Cir.** 1999) (referring to Comptroller General's decisions as "not binding");

*Nevada v. Dep't of Energy*, 400 F.3d 9, 16 (**D.C. Cir.** 2005) (Randolph, Tatel, Williams) (referring to Comptroller General's decisions as "not binding").

over whether 42 U.S.C. § 405(g) precludes it from invoking general federal-question jurisdiction under 28 U.S.C. § 1331. By disavowing any claim based on contract, the MDCH avoids the provision of the 1864 Agreement which incorporates the Contract Disputes Act, which in turn consigns all "essentially contractual" claims against federal executive agencies solely to the U.S. Court of Federal Claims. In so doing, however, MDCH leaves itself without any federal statute or regulation[7] as the source for its claims, as required for federal-question jurisdiction. As explained above, 28 U.S.C. §§ 517 and the Comptroller General decision cited by MDCH in no way confer federal-question jurisdiction on this court or obligate HHS/CMS to seek to intervene as a defendant in Woodcare's state-court lawsuits against the MDCH (or to do any of the other things which the MDCH demands). Accordingly, MDCH has failed to establish subject-matter jurisdiction.[8]

**ORDER**

HHS's motion to dismiss for lack of subject-matter jurisdiction [doc. #11] is **GRANTED**.

Pursuant to FED. R. CIV. P. 12(b)(1), the complaint is **DISMISSED** as to both defendants.

The separate judgment required by FED. R. CIV. P. 58 is being issued contemporaneously.

This is a final and immediately appealable order.

**IT IS SO ORDERED** this __22nd___ day of January 2010.

---

[7] MDCH has not grounded its claims in the violation of any federal constitutional provision or treaty, so those bases for federal-question jurisdiction are not available, either.

[8] This obviates the need to consider HHS's other arguments, e.g., that some or all of the MDCH's claims are moot, or are not ripe, or that the claims lack merit.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge